**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF PUERTO RICO**

UNITED STATES OF AMERICA,

     Plaintiff

         v.

DANNY GUZMAN-CORREA [6], ET AL.

     Defendants.

CR. NO. 07-290 (PG)

**OPINION AND ORDER**

Defendant Danny Guzman-Correa ("Defendant" or "Guzman") filed a "Motion for New Trial or, in the Alternative, Motion for Judgment Notwithstanding[sic] the Verdict" (Docket No. 2942). The government responded opposing the Defendant's request. See Docket No. 3484. For the reasons that follow, the Court **DENIES** Defendant's motion.

**I. BACKGROUND**

On July 24, 2007, Defendant, one of the leaders of this ninety-five co-defendant criminal case, was charged with three counts of firearm and narcotics violations involving heroin, crack cocaine, cocaine, and marijuana, all in violation of 21 U.S.C. §§ 841(a)(1), 846, 860, 853, and 18 U.S.C. § 924(c)(1) and (2). On September 3, 2009, the Defendant was found guilty of the counts he was charged of in the above-captioned case. See Docket No. 2916.

Immediately thereafter, the Defendant filed the motion now before the Court arguing: (1) that the evidence was insufficient to find the Defendant guilty of knowingly, intentionally and unlawfully possess, use and carry firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924 (c)(1); (2) that the government committed several violations to the Supreme Court's holding in Napue v. Illinois, 360 U.S. 264 (1959) during the testimonies of witnesses Miguel Lespier ("Lespier"), Elvin Cartegena-Colon ("Cartagena"), and Heriberto Garcia ("Garcia") by allowing them to testify falsely; (3) that the Defendant is entitled to a new trial because the Court admitted into evidence the fruits of an illegal search and seizure. See Docket No. 2942.

In its opposition, the government submits that Guzman was proven guilty of constructive illegal possession of a firearm; that the matters Defendant

claims to be <u>Napue</u> violations are issues of credibility that are within the province of the jury; and, that Guzman lacks standing to challenge the admission of the evidence in question. <u>See</u> Docket No. 3484.

## II. STANDARD OF REVIEW

### A. Federal Rule of Criminal Procedure 29

The Federal Rules of Criminal Procedure provide that a Court may set aside a jury verdict of guilty and enter judgement of acquittal upon a motion for judgment of acquittal. Fed.R.Crim.P. 29(c). "The standard under Rule 29 is identical in both the trial and appellate courts," <u>see</u> <u>U.S. v. Sotomayor</u>, 222 F.Supp.2d 142, 143 (D.P.R. 2002), namely, "the court must view the evidence, together with all reasonable inferences that may be drawn therefrom, in the light most favorable to the government, … and while so doing, must ask whether a rational trier of facts could have found guilt beyond a reasonable doubt." <u>See</u> <u>U.S. v. Loder</u>, 23 F.3d 586, 589 (1st Cir.1994) (internal citations and quotation marks omitted). Therefore, "[t]he government need not succeed in eliminating every possible theory consistent with the defendant's innocence, … , and circumstantial evidence alone may be sufficient to provide a basis for conviction." <u>U.S. v. Rodriquez-Duran</u>, 507 F.3d 749, 758 (1st Cir.2007) (internal citations omitted). In fact, in applying this standard, "no premium is placed upon direct as opposed to circumstantial evidence; both types of proof can adequately ground a conviction." <u>United States v. Ortiz</u>, 966 F.2d 707, 711 (1st Cir.1992).

In ruling on a motion under Rule 29, "the trial judge must resolve all evidentiary conflicts and credibility questions in the prosecution's favor; and, moreover, as among competing inferences, two or more of which are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt." <u>U.S. v. Olbres</u>, 61 F.3d 967, 970 (1st Cir.1995). "The court must reject only those evidentiary interpretations that are unreasonable, insupportable, or overly speculative, and must uphold any verdict that is supported by a plausible rendition of the record." <u>U.S. v. Ofray-Campos</u>, 534 F.3d 1, 31-32 (1st Cir.2008) (<u>citing</u> <u>Hernandez</u>, 218 F.3d at 64) (internal quotation marks omitted). <u>See also</u> <u>U.S. v. Cruzado-Laureano</u>, 404 F.3d 470, 480 (1st Cir.2005) ("Ultimately, the court need not believe that no verdict other than a guilty verdict could sensibly be reached, but must only satisfy itself that the guilty verdict finds support in a plausible rendition of the record.") (<u>citing</u> <u>United States v. Gomez</u>, 255 F.3d 31, 35 (1st Cir.2001)).

## B. Federal Rule of Criminal Procedure 33

Rule 33 of the Federal Rules of Criminal Procedure states that "the court may grant a new trial if the interest of justice so requires." FED.R.CRIM.P. 33(a). A defendant may ground a motion for new trial on newly discovered evidence or other grounds. FED.R.CRIM.P. 33(b). "The standard for granting a motion for a new trial is quite high." U.S. v. Genao-Sanchez, 208 F.Supp.2d 130, 134 (D.P.R. 2002). "[A] new trial is generally warranted only in the rare circumstance where retrial is necessary to prevent a miscarriage of justice." U.S. v. Rosario-Diaz, 202 F.3d 54, 66 (1st Cir.2000) (citing United States v. González-González, 136 F.3d 6, 12 (1st Cir.1998)). See also U.S. v. Rodriguez-De Jesus, 202 F.3d 482, 486 (1st Cir.2000)("The remedy of a new trial is rarely used; it is warranted only where there would be a miscarriage of justice or where the evidence preponderates heavily against the verdict."); U.S. v. Garcia-Alvarez, Nos. 07-1471, 07-1697, 2008 WL 4074287, at *6 (1st Cir. September 04, 2008)("The remedy of a new trial is to be granted sparingly and only to avoid a miscarriage of justice.").

"Motions for new trial are directed to the discretion of the trial court. In considering such a motion, the court has broad power to weigh the evidence and assess the credibility of both the witnesses who testified at trial and those whose testimony constitutes 'new' evidence." U.S. v. Wright, 625 F.2d 1017, 1019 (1st Cir.1980)(internal citations omitted).

## III. DISCUSSION

## A. Sufficiency of the Evidence

In Count Two of the Indictment, Docket No. 2, Guzman was charged with a violation of § 924(c)(1) and (2) for possessing firearms in furtherance of drug trafficking. The first issue presented by the Defendant in his motion requesting a new trial is that the evidence presented during trial was insufficient to convict him of this weapons charge. Guzman argues that the government only showed that he was in the presence of a firearm in only one occasion, and thus, he claims relatively little evidence was presented at trial that linked him to the firearm possession charge. The government contends that the testimony presented proved that to the extent Guzman was one of the leaders of the drug-trafficking organization, he was in constructive possession of firearms.

"To convict under § 924(c)(1), the government must prove possession of the guns and a significant nexus between the guns and the drug crime, meaning that 'the firearm facilitates or has the potential to facilitate the drug trafficking offense.'" U.S. v. Rodriguez-Lozada, 558 F.3d 29, 40 (1st Cir.2009) (citing

United States v. Roberson, 459 F.3d 39, 48 (1st Cir.2006)). With regards to constructive possession, the First Circuit Court of Appeals held in Rodriguez-Lozada that:

> Constructive possession is shown if Rodriguez knowingly had the power and intention to exercise dominion and control over a firearm directly or through others. … Constructive possession can be joint, does not require actual ownership of the firearm, and can be established through circumstantial evidence ….
>
> On the other hand, mere presence with or proximity to weapons or association with another who possesses a weapon are not enough to prove constructive possession. …. Instead, the government must show some action, some word, or some conduct that links the individual to the contraband and indicates that he had some stake in it, some power over it.

Rodriguez-Lozada, 558 F.3d at 40 (internal citations and quotation marks omitted).

In the case at hand, the government presented the testimony of co-defendant Miguel Lespier ("Lespier"), a leader of the drug conspiracy charged in the indictment of the above-captioned case, who declared that in 2004 Guzman became the owner of a heroin drug point at the Dr. Pila Housing Project ("DPHP"); that the drug points would employ individuals to act as "enforcers", who were armed; and, that "El Combo de Dr. Pila.", the group of drug point owners of which Defendant was a part of, had firearms and weapons, such as AK-47's. See Docket No. 2826, 2831. In addition, co-defendant Roberto Pizarro ("Pizarro"), a drug seller at DPHP, also identified Guzman as the owner of this heroin drug point, and testified as to an incident that took place at the end of 2004 during which Guzman asked him to check out a suspicious vehicle that was parked outside the housing project. Pizarro complied to Guzman's request equipped with a weapon he borrowed from Defendant's brother. See Docket No. 2841.

To the extent that the Defendant argues that the government failed to prove that he used a firearm or had one in his personal possession, he misstates the crime with which he was charged. See Rodriguez-Lozada, 558 F.3d at 40 at n. 9. As proffered by the government in their response, "[i]t is not necessary, however, for [the defendant] to have owned or physically possessed the guns to satisfy the possession requirements of … § 924(c)(1) because possession may be constructive." Id. at 41.

Based on the above-stated evidence, which is taken in the light most favorable to the government, the jury could have found beyond a reasonable doubt

that Guzman was guilty of the weapons charges. Accordingly, the Court rejects Guzman's insufficiency of the evidence argument set forth in his motion.

## B. Napue Violations

The Defendant argues in his motion that the government violated his right to due process when Lespier, Cartagena and Garcia were permitted to testify despite the fact that their testimony was untruthful. See Docket No. 2942. In its opposition, the government denies Guzman's allegation. See Docket No. 3484.

The rules governing the issue the Defendant now presents to this Court were established by the Supreme Court in Napue v. Illinois, 360 U.S. 264 (1959).

> There a government witness, in response to a question by the prosecutor, testified that he had received no promise of consideration in return for his testimony. The prosecutor had in fact promised him consideration, but did nothing to correct the witness' false testimony. The Supreme Court held that the prosecutor may not knowingly use false evidence, including false testimony, to obtain a tainted conviction regardless of whether the prosecutor solicits false evidence or, as here, allows false evidence to go uncorrected when it appears. The use of such false testimony violates the defendant's constitutional right to due process. A new trial is required if the false testimony could in any reasonable likelihood have affected the judgment of the jury.

U.S. v. Mangual-Garcia, 505 F.3d 1, 10 (1st Cir.2007) (citing Napue, 360 U.S. 264 (1959); Giglio v. United States, 405 U.S. 150, 154 (1972)) (internal quotations omitted).

First, the Defendant complains about the lack of "cross corroboration" among the testimonies provided by the government's witnesses. The Court is at a loss to understand how this constitutes a Napue violation on the part of the government. Because this is clearly not an issue that can arguably be raised under Napue, the Court will disregard it.

With regards to co-defendant and government witness Lespier, the Defendant complains that his testimony pertaining to his participation in meetings with the members of "El Combo de Dr. Pila" and about partaking in the murders of Ricky Pra and other individuals was not in the Drug Enforcement Administration's (DEA) investigative reports, known as DEA-6's, produced by Agent Victor Iglesias. However, the First Circuit Court of Appeals has held that "[t]he government violates due process when it obtains a conviction **by soliciting or failing to correct** false evidence." U.S. v. Casas, 425 F.3d 23, 45 (1st Cir.2005) (citing Napue, 360 U.S. at 269) (emphasis ours). The fact that Lespier testified during trial that he made some declarations to the DEA agent that were in turn omitted from the relevant DEA-6 reports does not forcefully imply that

the government made a **knowing** presentation of false testimony. In addition, "neither *Napue* nor any other decision prohibits a prosecutor from calling witnesses who will present conflicting stories." <u>Casas</u>, 425 F.3d at 45 (internal citations and quotation marks omitted). If Lespier gave a different account during trial than the one he gave during his conversations with the DEA agent is a matter to be explored on cross-examination. Finally, DEA-6 reports "are short, concise, summaries of the witnesses' version of the facts as recounted to the agents." <u>U.S. v. Weintraub</u>, 871 F.2d 1257, 1260 (5th Cir.1989) (<u>citing</u> <u>United States v. Merida</u>, 765 F.2d 1205, 1215 (5th Cir.1985)). "Thus, the fact that a specific piece of trial testimony is not included in a DEA-6 report is not necessarily a reflection on the credibility of the witness, but instead may be the result of an agent's transcription techniques." <u>Weintraub</u>, 871 F.2d at 1260.

The Defendant also complains that the government allowed Lespier to declare that he met Guzman in mid-2004 at a disco in Old San Juan when, at the time, the Defendant was still incarcerated. According to the record, the testimony during Lespier's cross-examination was as follows:

> Q And how long after you took over did you allegedly meet with Mr. Guzman in a discotheque?
>
> A 2004, approximately.
>
> Q Pardon?
>
> A 2004, approximately.
>
> Q When in 2004? Early? Middle?
>
> A Mid 2004.
>
> Q March-April, April-May?
>
> **A I don't recall. Midway through it. I don't recall dates.**

<u>See</u> Docket No. 2835 at page 31 (emphasis ours). It is clear from the record that Lespier's testimony during cross-examination was that he didn't recall exact dates, and thus, the government was under no obligation to intervene and correct the witness.

With regards to Cartagena, the Defendant complains that the witness testified during cross-examination that he had not discharged a weapon, whereas according to a letter prepared by the prosecutors and delivered to Defendant prior to trial, Cartagena had both possessed and discharged firearms in the past. Again, if the issue was due to the witness giving conflicting accounts to

the government and at trial, "such conflicts are a matter to be explored on cross-examination … , and the credibility of each account is for the jury to determine." Casas, 425 F.3d at 45. Moreover, "merely to point to inconsistencies between two versions of a witness' testimony does not show that the government, … , was presenting false testimony, let alone testimony known to be false." U.S. v. Pagan-Santini, 451 F.3d 258, 265 (1st Cir.2006) (citing United States v. Pandozzi, 878 F.2d 1526, 1532 (1st Cir.1989)).

Finally, regarding Garcia's testimony during trial, Guzman argues that the witness was allowed to testify that he was not receiving anything in exchange for his testimony. The Defendant claims in his motion that despite Garcia's admission to being a seller at the Dr. Pila Housing Project, he is not being charged with said conduct, and thus, "it is highly unlikely he would have been permitted to testify absent some kind of agreement." See Docket No. 2942 at pages 7-8. As pointed out by the government in its opposition, this statement is merely unsupported speculation and the Court will not validate it by discussing it herein.

In the case at hand, although the Defendant claims that the witnesses gave false testimonies in several occasions during trial, "he offers no evidence that would lead to the conclusion that the government *knew* that the testimony was allegedly false." See Abrante v. St. Amand, 595 F.3d 11, 18 (1st Cir.2010). Consequently, considering the standard for granting a motion for a new trial is so high, we find that Defendant has not met his burden and his arguments must thus fail.

**C. Fourth Amendment Claim**

In his motion, the Defendant also reiterates an argument raised many times before trial and rejected by the Court in each instance: that the evidence seized during a "traffic stop" on August 5th, 2005 from a Chevrolet Malibu that was rented by the Defendant but occupied by others. The Defendant also challenges this Court's refusal to hold an evidentiary hearing on this issue. On the other hand, the government contends that the Defendant lacks standing to challenge the traffic stop in question and did not have an absolute right to an evidentiary hearing on the issue.

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated … ." U.S. Const. amend. IV. "Police searches are constrained by the Fourth Amendment's reasonableness requirement … ." U.S. v. McGhee, No. 09-1322, 2010 WL 4943108 (1st Cir. December 07, 2010). "A 'search'

occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." U.S. v. Jacobsen, 466 U.S. 109, 113 (1984).

"Before a court may reach the merits of a motion to suppress, 'the defendant carries the burden of establishing that he had a reasonable expectation of privacy with respect to the area searched or … the items seized.'" Rodriguez-Lozada, 558 F.3d at 37 (citing United States v. Lipscomb, 539 F.3d 32, 35-36 (1st Cir.2008)). "Although the threshold requirement is referred to as standing, it is more properly considered under a Fourth Amendment analysis." Rodriguez-Lozada, 558 F.3d at 37. "[F]ailure to present evidence with respect to such an expectation prevents a defendant from making a claim for suppression under the Fourth Amendment." United States v. Samboy, 433 F.3d 154, 162 (1st Cir.2005) (citing United States v. Lewis, 40 F.3d 1325, 1333 (1st Cir.1994)).

The evidence Defendant seeks to suppress stems from a police search that took place on August 5th, 2005, found in a Chevorelet Malibu 2004, license plate GBT 257. The record indicates that the Police of Puerto Rico stopped the car, which was occupied by co-defendants Fernando C. Martine-Serrano, Fernando Rodriguez-Martinez, and Axel Vázquez-Medina, and found controlled substances and paraphernalia during their search. The vehicle in question was rented to defendant Guzman by Avis from July 9th, 2005, until August 9th, 2005. Guzman admits that he lent the rented car to its occupants. Therefore, it stems from the record that Guzman was not the owner of the vehicle searched, nor was the car in his possession and/or control on the date of the events.

The question before the Court has always been whether Defendant had a reasonable expectation of privacy in the area searched and in relation to the items seized. The answer is no.

In a similar case to the one at hand, the Sixth Circuit Court of Appeals held that the defendant in whose name the car had been rented, but who was not in possession of the car where the police found the drugs at the time of the search, lacked standing to challenge the search. See U.S. v. Blanco, 844 F.2d 344 (6th Cir.1988). The court found that because the defendant did not keep possession of the car, gave his only set of keys to another co-defendant, had no access to the car thereafter, and could not exclude others from the vehicle, he had no subjective expectation of privacy in the rented car. See id. at 349. In fact, the court in Blanco based its holding on a First Circuit Court of

Appeals case, namely, <u>United States v. Gomez</u>, 770 F.2d 251 (1st Cir.1985), wherein the First Circuit refused to suppress evidence acquired in a search of an apartment that the defendant had rented but did not occupy or use. <u>See</u> <u>Blanco</u>, 844 F.2d 349 (<u>citing</u> <u>Gomez</u>, 770 F.2d at 254-55).

As stated in <u>Gomez</u>, the following factors are relevant to a privacy expectation: "possession or ownership of the area searched or the property seized; prior use of the area searched or the property seized; legitimate presence in the area searched; ability to control or exclude others' use of the property; and a subjective expectation of privacy." <u>Gomez</u>, 770 F.2d at 255 (internal citation omitted). The Defendant here failed to make a showing of any one of these factors. Therefore, we are forced to find that the Defendant clearly failed to sustain his burden of proving a legitimate expectation of privacy.

### IV. CONCLUSION

For the reasons explained above, the Court **DENIES** Defendant's motion for new trial (Docket No. 2942).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, January 24, 2011.

<u>S/ JUAN M. PÉREZ-GIMÉNEZ</u>
JUAN M. PÉREZ-GIMÉNEZ
UNITED STATES DISTRICT JUDGE